UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE GARCIA and JUAN MORALES, on
behalf of themselves and all others similarly
situated,

                                          Plaintiffs,

          -against-

GIUSEPPE MAGNOTTA, VINCENT
SORRENTINO, ATLANTIC PIZZA INC., and
ABC CORP. d/b/a ANGELINA'S PIZZA &
RESTAURANT,

                                   Defendants.
-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
25-CV-390(NJC)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this wage and hour action, on referral from the Honorable Nusrat J. Choudhury for Report and Recommendation, is Plaintiffs Jose Garcia's ("Garcia") and Juan Morales's ("Morales" and, together, "Plaintiffs") motion pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") seeking a default judgment against Defendants Giuseppe Magnotta ("Magnotta"), Vincent Sorrentino ("Sorrentino"), and Atlantic Pizza Inc. ("Atlantic Pizza" or the "Restaurant" and, collectively, "Defendants").[1] *See* Docket Entry ("DE") [20]. For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion be granted in part and denied in part and that a default judgment be entered against

---

[1] Although Plaintiffs named ABC Corp. d/b/a Angelina's Pizza & Restaurant as a Defendant in the Complaint, they did not request that a certificate of default be issued with respect to that entity, nor do they currently seek a default judgment against it. Accordingly, as used in this Report and Recommendation, "Defendants" refers only to Magnotta, Sorrentino, and Atlantic Pizza.

Defendants, jointly and severally, in the amount of $34,423.60 in favor of Garcia, with prejudgment interest accruing at a rate of $1.60 per day, and $361,924.30 in favor of Morales, with prejudgment interest accruing at a rate of $37.06 per day. The Court further recommends that Plaintiffs' counsel be awarded $58,729.70 in attorneys' fees and costs.

## I.    BACKGROUND

### A.    Facts

Unless stated otherwise, the following facts are taken from the Complaint ("Compl."),[2] DE [1], and are accepted as true for purposes of the instant motion. Atlantic Pizza is an Italian restaurant located at 23 Atlantic Avenue, Lynbrook, NY 11563. *Id.* at ¶ 7. From October 2017 until October 2022, Garcia worked as a busboy at the Restaurant. *Id.* During that time, he "generally worked 50 hours a week . . . with certain exceptions." *Id.* at ¶ 15. Specific exceptions are not described, however. In any event, Garcia was not required to punch in or out of work and he is unaware of how Defendants recorded his hours worked. *See* Declaration of Jose Garcia ("Garcia Decl."), DE [20-2], at ¶ 12. To this end, Garcia has not submitted pay records in support of the instant motion. He asserts, however, that Defendants paid him $7.50 per hour, in cash, and that he also received tips, which were generally between $40 and $70 per day. Compl. ¶¶ 45-46; Garcia Decl. ¶ 9. Garcia did not receive notice regarding a tip credit and he claims that his tips were not recorded. Garcia Decl. ¶

---

[2] Although titled "First Amended Complaint," there have been no amendments.

2

9.  He also did not receive a wage notice when he was hired and Defendants never provided him with a wage statement.  *Id.* at ¶¶ 10-11.

From "Summer 2017" until October 2023, Morales worked as a "pizza maker and food preparer" at the Restaurant.  Compl. ¶ 47.  He generally worked over 79 hours a week and was paid $13 to $15 per hour by check, as well as "about $300 in cash per week."  *Id.* at ¶ 48; *see* Declaration of Juan Morales ("Morales Decl."),[3] DE [20-3], at ¶ 7.  In support of the instant motion, Morales submitted four wage statements:  three of which reflect a $13 hourly rate of pay (dated July 31, 2020, September 24, 2021, and October 29, 2021) and one of which reflects a $15 hourly rate of pay (dated May 5, 2022).  *See* Declaration of Marcus Montiero ("Montiero Decl."), DE [20-14], Ex. 10.  Each pay statement reflects that Morales worked 40 hours.  *Id.*  Like Garcia, Morales did not receive a wage notice at the time of his hire and Defendants never provided him with a wage statement.  Morales Decl. ¶¶ 7-8.

Plaintiffs allege that, in addition to Atlantic Pizza, both Magnotta and Sorrentino are "employers" pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.*, because they exercised "sufficient control of the operations of the Plaintiffs so as to be an 'employer' under FLSA 29 U.S.C. § 203(d) and N.Y. Lab. Law § 190(3)."  Compl. ¶¶ 12, 14.  The alleged control includes having active operational control of the Restaurant, setting weekly work hours, establishing wages, implementing and

---

[3] The Morales Declaration is titled as the Declaration of Jose Garcia.  DE [20-3].  The Court presumes this to be a typographical error as the introductory statement indicates that it is Morales's Declaration, made under the penalty of perjury, and it bears Morales's signature.

3

supervising wage and hour practices, determining employee compensation, directing employee duties and tasks, and making hiring and firing decisions.  *Id*. at ¶¶ 11, 13, 32-43.  Moreover, Atlantic Pizza has employees engaged in commerce or in the production of goods and services for commerce, including "employees who handle, sell, or otherwise work on goods or materials that have been moved in, or produced for, interstate commerce."  *Id*. at ¶¶ 16, 18.  For each of the three years preceding the filing of this action, Defendants' gross revenue exceeded $500,000.  *Id*. at ¶ 17.

B.     **Procedural Background**

By way of a Complaint dated January 22, 2025, Plaintiffs commenced this putative class and collective action, alleging causes of action for:  (1) failure to pay overtime wages under the FLSA; (2) failure to pay overtime wages under the NYLL; (3) violation of the NYLL's spread-of-hours requirement; (4) failure to provide a wage notice in violation of N.Y. Lab. Law § 195(1); (5) failure to provide any wage statements in violation of N.Y. Lab. Law § 195(3); (6) violation of the New York State Minimum Wage Act; (7) unlawful retention/misappropriation of tips; and (8) improper tip pooling.  DE [1].  In their Complaint, Plaintiffs seek recourse on both a class and collective basis for similarly situated individuals.  Compl. ¶¶ 20-31.  No class or collective was ever certified and the instant motion only addresses Garcia's and Morales's claims.

On March 10, 2025, Plaintiffs served the Summons and Complaint on each of the Defendants.  DE [7].  No Defendant has answered or otherwise responded and the time to do so has expired.  On April 2, 2025, Plaintiffs requested that the Clerk of

the Court enter a Certificate of Default against Defendants.  DE [8].  Although initially denied for failure to demonstrate personal service on all Defendants, the Clerk of the Court subsequently entered a Certificate of Default against Defendants on April 11, 2025.  DE [11].  Plaintiffs filed the instant motion on August 13, 2025, DE [20], which Judge Choudhury referred to this Court for a Report and Recommendation.  *See* Electronic Order dated Feb. 4, 2026.  Plaintiffs do not seek relief with respect to their claims for minimum wage violations, unlawful retention/misappropriation of tips, or improper tip pooling, as those causes of action are neither referenced in Plaintiffs' brief in support of the instant motion, DE [20-1], nor included in the Estimated Calculation of Damages.  *See* DE [20-11].  Accordingly, they are not addressed further herein.  For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted with respect to liability and that judgment be entered against Defendants, jointly and severally, to the extent described herein.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *Id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *Vermont Teddy Bear*

5

*Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657(FB)(LB), 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (Report and Recommendation), *adopted by* 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the Court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

## III.   DISCUSSION

### A.   <u>Liability Under the FLSA</u>

To prevail on a claim under the FLSA, the plaintiff must initially establish that: "(1) the Defendant is an enterprise participating in commerce or the production

of goods for the purpose of commerce; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-254(DRH)(AKT), 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (quoting *Garcia v. Badyna*, No. 13-CV-4021(RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014)); *see* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120(JG), 2013 WL 3010810, at *11 (E.D.N.Y. June 18, 2013) (describing standard for liability under the FLSA).  There is no similar requirement under the NYLL.  *See Chen Jie Yin v. Kim*, No. 07-CV-1236(DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008) (observing that the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any amount of annual sales").

### 1.    Interstate Commerce

An "enterprise engaged in commerce or in the production of goods for commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and that has employees "engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1); *see Valdez v. H&S Rest. Operations, Inc.*, No. 14-CV-4701(SLT)(MDG), 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016) (Report and Recommendation), *adopted by* 2016 WL 3087053 (E.D.N.Y. May 27, 2016) (describing the FLSA's interstate commerce requirement); 29 C.F.R. § 779.103 (defining "employees engaged in commerce").  "Courts in this District routinely hold

that restaurant employees handle items that travel in interstate commerce, such as ingredients for food or cleaning supplies, and that restaurants are therefore presumptively businesses engaged in commerce within the meaning of the FLSA." *Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056(RER), 2022 WL 4586100, at *5 (E.D.N.Y. Sept. 29, 2022) (citing *Bin Gao v. Jian Song Shi,* No. 18-CV-2708(ARR)(JO), 2019 WL 3936810, at *4 (E.D.N.Y. Aug. 20, 2019)); *Hristova v. 3321 Astoria Inc.*, No. 17-CV-1633(RER), 2018 WL 4006880, at *8 (E.D.N.Y. June 27, 2018) ("Unless Defendants can show that every item in the restaurant from the cleaning supplies to the paper napkins to the beverages served were made in the state of New York, the presumption is that [the defendant] is 'engaged in commerce . . . .'").

Plaintiffs allege that, at all relevant times, Atlantic Pizza had employees, including Garcia and Morales, who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce. Compl. ¶ 14. They further allege that the Restaurant's annual gross volume of sales exceeded $500,000 for each applicable year of their employment. *Id.* at ¶ 17. Although "allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce," due to Defendants' default, "the Court may accept these uncontested allegations as true and make reasonable inferences." *Singh v. Meadow Hill Mobile Inc.*, No. 20 Civ. 3853(CS)(AEK), 2021 WL 4312673, at *4 (S.D.N.Y. Aug. 9, 2021) (Report and Recommendation), *adopted by* 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021). Accordingly, Plaintiffs' allegations,

accepted as true, satisfy the FLSA's interstate commerce requirement. *See Singh*, 2021 WL 3862665, at \*4; *Valdez*, 2016 WL 3079028, at \*3.

### 2.  Employer-Employee Relationship

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." *Id.* at § 203(d).  In evaluating whether an individual is an "employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  The analysis turns on whether the defendant had "operational control" over employees. *Id.*

Plaintiffs allege that Defendants "maintained control, oversight, and direction over [them], including timekeeping, payroll, and other employment practices." Compl. ¶ 16.  They further assert that Magnotta and Sorrentino were owners, officers, directors, shareholders, and/or managing agents of the Restaurant, including having active operational control of the Restaurant, setting weekly work hours, establishing wages, implementing and supervising wage and hour practices, determining employee compensation, directing employee duties and tasks, and making hiring and firing decisions. *Id.* at ¶¶ 11, 13, 32-43.  These allegations, accepted as true, establish

9

that Defendants were Plaintiffs' employers under the FLSA. *See Valdez*, 2016 WL 3079028, at \*3; *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914(ENV)(MMH), 2023 WL 6338666, at \*6 (E.D.N.Y. Sept. 29, 2023) ("With respect to an individual defendant, the underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees . . . .") (internal quotation omitted). Based on the above, the parties are covered by the FLSA.

### B. Causes of Action

#### 1. Failure to Pay Overtime Under the FLSA and NYLL

The FLSA requires that covered employers pay any employee who works more than 40 hours per week a premium for overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Likewise, "[t]he New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at \*18 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)); *see* N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.2 (employing the same method as the FLSA for calculating overtime wages); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (observing that the NYLL adopts the FLSA's definition of overtime); *Chen Jie Yin*, 2008 WL 906736, at \*4 (observing that the NYLL "mandates that employers provide time-and-a-half compensation for their employees' work hours that exceed 40 hours per week" but it "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales"). Courts have observed that a finding of liability for failure to pay overtime wages under the FLSA is sufficient to find liability for failure to pay overtime wages under the NYLL. *See,*

10

*e.g.*, *Rodriguez v. Franco Realty Assocs., LLC*, No. 22-CV-6380(JPO), 2023 WL 8762994, at \*3 (S.D.N.Y. Dec. 13, 2023) ("[F]or the same reasons that Defendants are liable for the overtime wages violations under the FLSA, Defendants are also liable under the NYLL."). Accordingly, the FLSA and NYLL causes of action are evaluated together.

Garcia alleges that, from October 2017 until October 2022, he worked approximately 50 hours per week. Compl. ¶¶ 44-45. Morales alleges that, during the entirety of his employment, he "generally worked over 79 hours . . . a week," but for a period of time he worked 92 hours per week. *Id.* at ¶ 47; Morales Decl. ¶ 6. Both Plaintiffs allege that they were not paid properly for hours in excess of 40 per week. Compl. ¶¶ 54, 62-70. These allegations, accepted as true, establish that Defendants violated the FLSA's and NYLL's overtime pay requirements. *Valdez*, 2016 WL 3079028, at \*3; *see Pavia v. Around the Clock Grocery, Inc.*, No. 03-CV-6465(ERK)(CLP), 2005 WL 4655383, at \*5 (E.D.N.Y. Nov. 15, 2005) ("[W]here the employer has defaulted, the courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (internal quotation and alteration omitted). Accordingly, having determined that Defendants are Plaintiffs' employers and are subject to the FLSA and NYLL, the Court respectfully recommends that a default judgment be entered against them for their failure to pay overtime wages.

2.    NYLL Spread-of-Hours Requirement

"New York Labor Law entitles employees who earn the minimum wage or less to earn an additional hour of pay, at the minimum wage, for each day where the employee works more than ten hours." *Amador v. 109-19 Food Corp.*, No. 21-CV-4633(EK)(VMS), 2025 WL 1032031, at *25 (E.D.N.Y. Mar. 14, 2025) (Report and Recommendation), *adopted by* 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025); *see* 12 N.Y.C.R.R. § 142-2.4 ("An employee shall receive one hour's pay at the basic minimum wage rate . . . for any day in which . . . the spread of hours exceeds 10 hours . . . ."). The "spread of hours" is the length of time "between the beginning and end of an employee's workday," and includes working time, time for meals, and off-duty time. 12 N.Y.C.R.R. § 142-2.18; *see Vasquez v. Cousins Grocery*, No. 25-CV-2548(RML), 2025 WL 1384069, at *8 (E.D.N.Y. May 13, 2025) (observing that the "spread of hours" is "the interval between the beginning and end of an employee's workday"). A plaintiff establishes an employer's liability for failure to provide spread-of-hours pay when he alleges that he worked more than ten hours on a given day but did not receive spread-of-hours pay. *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 371 (E.D.N.Y. 2022). The right to spread-of-hours pay applies only to compensation equal to or below the minimum wage. *Gu v. Lemonleaf Thai Rest. Mineola Corp.*, No. 18-CV-6614(PKC)(AYS), 2024 WL 3813379, at *3 (E.D.N.Y. June 13, 2024) (holding that spread-of-pay requirements only apply "to those employees making minimum wage and not to those making more than minimum wage").

12

Plaintiffs only seek recovery for this cause of action on behalf of Garcia, and not Morales, as "[Morales's] regular rate [was] more than minimum wage." *See* Memorandum of Law in Support of Motion for Default Judgment ("Pls.' Mem."), DE [20-1], at 17. Garcia alleges that he "regularly had work days that lasted more than ten (10) hours" for which Defendants failed to compensate him in violation of 12 N.Y.C.R.R. § 146-1.6. Compl. ¶¶ 72-73. He asserts that he worked a total of 19 shifts exceeding 10 hours. DE [20-11]; Garcia Decl. ¶ 9. These allegations, accepted as true, are sufficient to establish a cause of action for a spread-of-hours violation. *See Candelario-Salazar v. Kings II Deli & Grocery, Inc.*, No. 20-CV-760(MKB)(SMG), 2020 WL 8413558, at *6 (E.D.N.Y. Dec. 28, 2020) (finding spread-of-hours violation where the plaintiff alleged "that he worked for 12 hours per day, six days per week") (Report and Recommendation), *adopted by* 2021 WL 129062 (E.D.N.Y. Jan. 14, 2021); *Amador,* 2025 WL 1032031, at *25. Accordingly, the Court respectfully recommends that default judgment be entered with respect to Garcia's spread-of-hours cause of action.

### 3. NYLL Wage Statements and Notice Requirement

Plaintiffs also seek default judgment for Defendants' alleged failure to provide a wage notice pursuant to N.Y. Lab. Law § 195(1) and any wage statements pursuant to N.Y. Lab. Law § 195(3). Compl. ¶¶ 75-84; Pls.' Mem. at 18. Section 195(1) of the NYLL requires that employers provide employees a wage notice at the time of hiring containing, among other things, the rate of pay, the basis thereof, and the pay schedule. N.Y. Lab. Law § 195(1)(a). Section 195(3) of the NYLL requires that employers provide employees with "a statement with every payment of wages, listing

13

information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation omitted).

Plaintiffs allege that Defendants did not provide them with a wage notice as required by N.Y. Lab. Law § 195(1) or any wage statements as required by N.Y. Lab. Law § 195(3). Compl. ¶¶ 75-84. They do not claim that they suffered monetary harm, however. The Second Circuit has recently held that purely technical violations of N.Y. Lab. Law §§ 195(1) and 195(3), without allegations of actual harm, are insufficient to confer Article III standing necessary to maintain a claim. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (holding that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm"); *see also Lock v. Costco Wholesale Corp.*, No. 23-CV-7904(NJC)(ST), 2024 WL 4728594, at *5 (E.D.N.Y. Nov. 8, 2024) (dismissing claim arising under N.Y. Lab. Law § 195(3) where the plaintiff did not allege any actual injury arising out of the failure to provide a wage statement); *Cao v. Wedding in Paris LLC*, No. 20-CV-2336(RJK)(JAM), 2024 WL 1518847, at *24 (E.D.N.Y. Mar. 29, 2024) ("Absent any factual allegations of a concrete injury fairly traceable to Defaulting Defendants' failure to provide wage notices or wage statements, Plaintiffs' claims . . . do not demonstrate Article III standing.").

There is an exception to the rule, however, where a plaintiff alleges that the failure to provide a wage notice or wage statement affected his ability to advocate for the receipt of proper pay or to seek legal recourse in a timely manner. *See, e.g., Abe*

14

*v. Yamaguchi & Friends, Inc.*, No. 22-CV-3164(NRM)(ARL), 2024 WL 3875779, at *10 (E.D.N.Y. Aug. 20, 2024) (holding that allegations of wage notice and wage statement violations, when considered in conjunction with the plaintiff's allegations that the defendant failed to pay her the requisite minimum wage, were sufficient to establish Article III standing); *Veloz v. MM Custom House Inc.*, No. 19-CV-852(DLI)(JRC), 2024 WL 1282698, at *6 (E.D.N.Y. Mar. 26, 2024) (holding that the plaintiff demonstrated Article III standing "because wage notices and wage statements are necessary to empower employees to understand and advocate for their rights, and the deprivation of that information can impinge on an employee's interest not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay") (internal quotation omitted); *Isayeva v. Diamond Braces*, No. 22 Civ. 4575(KPF), 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (finding actual harm for purposes of Article III standing where the deprivation of notice affected the plaintiffs' ability "to discover their underpayment and advocate for themselves").

Although Plaintiffs do not claim specific monetary harm as a result of Defendants' violation of N.Y. Lab. Law §§ 195(1) and 195(3), they allege that Defendants' violation "impinged on Plaintiffs' interests . . . not only in being paid what is owed, but also being able to advocate for the receipt of proper pay." Compl. ¶¶ 77, 83. These allegations are sufficient to demonstrate Article III standing, and, thus, Plaintiffs have established violations of N.Y. Lab. Law §§ 195(1) and 195(3). *See Abe*, 2024 WL 3875779, at *10; *Veloz*, 2024 WL 1282698, at *6; *Isayeva*, 2024 WL 1053349, at *17. Accordingly, the Court respectfully recommends that Plaintiffs'

15

motion for default judgment be granted with respect to their claims arising under N.Y. Lab. Law §§ 195(1) and 195(3).

### C.    **Damages**

Having determined Defendants' liability, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111. The Second Circuit allows for "an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 619 (S.D.N.Y. 2011) (quoting *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111). It is well established that "the moving party bears the burden of proving a reasonable basis for determination of damages and should not be awarded damages if the evidence is not adequate." *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995).

Garcia seeks: (1) $94,542.00 in unpaid overtime wages; (2) $94,542.00 in liquidated damages; (3) $10,000.00 in statutory damages pursuant to N.Y. Lab. Law §§ 195(1) and 195(3); (4) $39,769.80 in pre-judgment interest; and (5) post-judgment interest. *See* Pls.' Mem. at 12-20; Proposed Judgment, DE [20-15]. Morales seeks: (1) $366,044.25 in unpaid overtime wages; (2) $366,044.25 in liquidated damages; (3) $10,000.00 in statutory damages pursuant to N.Y. Lab. Law §§ 195(1) and 195(3); (4) $137,507.28 in pre-judgment interest; and (5) post-judgment interest.[4] *Id.* Plaintiffs

---

[4] In their motion for default judgment, Plaintiffs assert that Garcia is entitled to relief under 26 U.S.C. § 7434, which addresses the willful filing of fraudulent information with respect to payments. 26 U.S.C. § 7434(a). Plaintiffs do not assert this as a cause of action and the Court does not consider it further.

16

also seek an award of attorneys' fees and costs.  Pls.' Mem. at 23-26.  Having determined Defendants' liability as described above, the Court respectfully recommends that judgment in favor of Garcia be entered in the amount of $34,423.60, judgment in favor of Morales be entered in the amount of $361,924.30, and that Plaintiffs be awarded $58,729.70 in attorneys' fees and costs.

    1.    <u>Unpaid Overtime Wages</u>

The measure of damages in an FLSA or NYLL case is the amount the plaintiff should have been paid minus the amount the plaintiff was actually paid.  *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 122 (E.D.N.Y. 2023) (citing *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904(PAE)(JLC), 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 28, 2021)); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 253 (E.D.N.Y. 2024) ("The amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL.").  A plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, but the plaintiff is entitled to relief under whichever statute provides for greater damages.  *Ventura v. Putnam Gardens Parking Corp.*, No. 20-CV-119(JKG)(VF), 2023 WL 3603589, at *3 (S.D.N.Y. Mar. 20, 2023) (Report and Recommendation), *adopted by* 2023 WL 3601649 (S.D.N.Y. May 23, 2023).  Therefore, damages for overtime violations under the FLSA and NYLL are analyzed the same but awarded only once.  *Calle v. Pizza Palace Café LLC*, No. 20-CV-4178(LDH)(LB), 2022 WL 609142, at *7 (E.D.N.Y. Jan. 4, 2022) (observing that a

plaintiff may not recover unpaid wages under both the FLSA and NYLL, but that the "plaintiff will recover the same amount under the FLSA and NYLL here").

An award of damages may be "based on the plaintiff's recollection and estimate of hours worked, which are presumed to be correct as a result of the defendant's default." *Jimenez*, 744 F. Supp. 3d at 252; *see Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028(NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (holding that a plaintiff "need not compute FLSA damages with precision") (Report and Recommendation), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). In cases like this action, courts typically calculate damages under the NYLL, which provides for the greatest recovery, *Jimenez*, 744 F. Supp. 3d at 253 (citing *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848(RRM)(RER), 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022)), because it is the longer statute of limitations, *Marquez v. Indian Taj, Inc.*, No. 20-CV-5855(DG)(RML), 2025 WL 3460319, at *4 (E.D.N.Y. Oct. 22, 2025) (awarding damages under the NYLL's longer statute of limitations), and provides for an award of prejudgment interest, which the FLSA does not. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 390 (E.D.N.Y. 2012) (holding that prejudgment interest is not available under the FLSA where liquidated damages are awarded).

At all relevant times, Defendants paid Garcia an hourly rate of $7.50, meaning his overtime rate of pay was $11.25 per hour. Garcia Decl. ¶ 8. From October 2017 to March 2020, Garcia worked 10 overtime hours per week, and from June 2020 until October 2022, he worked 12 overtime hours per week.[5] *Id.* He does not claim that he

---

[5] Garcia does not provide specific dates and the Court will rely on the midpoint of each month.

18

was not paid for these hours, but only that he "was not paid an overtime premium for those hours worked over 40 in a workweek." *Id.* at ¶ 9. This results in a $3.75 underpayment for each overtime hour. As this action was filed on August 31, 2025, and allowing for the NYLL's more permissive six-year statute of limitations, *see* N.Y. Lab. Law §§ 198(3), 663(3), the Court considers damages beginning on August 31, 2019. From August 31, 2019 to March 1, 2020 (28 weeks), Garcia worked 10 hours per week for which he did not receive an overtime premium. From June 16, 2020 until October 2022 (121 weeks), Garcia worked 12 hours per week for which he did not receive an overtime premium. Accounting for both periods, this results in unpaid overtime in the amount of $6,495.00. Accordingly, the Court respectfully recommends that judgment in the amount of $6,495.00 be entered against Defendants, jointly and severally, in favor of Garcia for unpaid overtime wages.

From 2017 to 2020, Defendants paid Morales $13.00 per hour, meaning his hourly overtime rate of pay would have been $19.50.[6] Morales Decl. ¶ 7. In 2023, Defendants paid Morales $15.00 per hour, which amounts to an overtime rate of pay of $22.50 per hour. *Id.* Morales claims that, from an unspecified date in 2017 to March 2020, he worked 79 hours per week, and that from June 16, 2020 to October 23, 2023, he worked 92 hours per week. *Id.* In contrast to Garcia, Morales asserts that he was not paid anything – not simply an overtime premium – for hours he worked in excess of 40 in a given week. *Id.* Again applying the August 31, 2019 start

---

[6] Although Morales's declaration states he was paid $14.20 per hour, the Earnings Statement submitted for this period reflects that he was paid $15.00 per hour. DE [20-14]. The Court relies on the Earnings Statement.

point described above, this amounts to 133 weeks of work, working 39 overtime hours per week, at the $19.50 overtime rate, and 42 weeks of work, working 52 overtime hours per week, at the $22.50 overtime rate.  Accordingly, for these two periods, and applying the correct overtime rate, the Court respectfully recommends that judgment be entered against Defendants, jointly and severally, in favor of Morales in the total amount of $150,286.50 for unpaid overtime wages.  *See Quito v. KW NY Constr. Inc.*, No. 22-CV-8417(NSR), 2024 WL 2274392, at *3 (S.D.N.Y. May 20, 2024) (entering a default judgment jointly and severally against an entity and individual defendant); *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862(RJD)(RML), 2021 WL 1207316, at *12 (E.D.N.Y. Mar. 30, 2021) (recommending joint and several liability against a corporation and individual defendant upon a finding of liability).

### 2.    Liquidated Damages

Plaintiff further seeks to recover liquidated damages under the NYLL.  Pls.' Mem. at 18.  The NYLL "allows a plaintiff 'to receive liquidated damages equal to one hundred percent of the total amount of the wages found to be due, unless the employer provides a good faith basis for believing he or she was in compliance with the law.'" *Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493(AMD)(RER), 2022 WL 5428688, at *12 (E.D.N.Y. Aug. 16, 2022) (quoting *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997(DLI)(CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017)); *see* N.Y. Lab. Law §§ 198(1)(a), 663(1).

Here, Defendants' default alone demonstrates a lack of good faith and that liquidated damages are therefore appropriate.  *See Valdez*, 2016 WL 3079028, at *6

("As the defendants here have defaulted, they have not shown they acted in good faith."); *Guaman v. Krill Contracting, Inc.*, No. 14-CV-4242(FB)(RER), 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) ("[I]n light of the default, there has also been no showing that the Defaulting Defendants acted in good faith or that the Court should decline exercising its discretion in granting liquidated damages."). Accordingly, having recommended that Garcia be awarded $6,495.00 for unpaid overtime wages, the Court respectfully recommends that he also be awarded that amount in liquidated damages pursuant to the NYLL, *i.e.*, $6,495.00. Likewise, having recommended that Morales be awarded $150,286.50, for unpaid overtime wages, the Court recommends that he also be awarded the same amount in liquidated damages pursuant to the NYLL, *i.e.*, $150.286.50.

### 3.   Wage Notice and Wage Statement Damages

Both Garcia and Morales seek to recover $5,000.00 for Defendants' wage notice violation pursuant to N.Y. Lab. Law § 195(1) and $5,000.00 for Defendants' wage statement violations pursuant to N.Y. Lab. Law § 195(3). *See* Compl. ¶¶ 75-84; Pls.' Mem. at 14-15. Section 195(1) provides for an award of $50 per day of the violation, with a statutory maximum award of $5,000, and Section 195(3) provides for an award of $250 per day of the violation, with a statutory maximum award of $5,000. *See* N.Y. Lab. Law § 198(1-b), (1-d).

Both Plaintiffs worked for Defendants for more than 100 days, resulting in the maximum statutory penalty. Compl. ¶¶ 44, 47. At no point during this period did Defendants provide Plaintiffs with the NYLL's required wage notice or wage

21

statements. *Id.* at ¶¶ 56-57. Having concluded that Defendants are liable under N.Y. Lab. Law §§ 195(1) and 195(3), and that the duration of their violations results in an award of the maximum statutory penalty, the Court respectfully recommends that each Plaintiff be awarded a total of $10,000.00 for Defendants' violations of N.Y. Lab. Law §§ 195(1) and 195(3).

### 4.      Spread-of-Hours Damages

Only Garcia seeks spread-of-hours damages. Pls.' Mem. at 17. Plaintiffs' calculation of damages reflects a total of 679 days, with varying rates of applicable minimum wage, on which Garcia worked in excess of 10 hours. DE [20-11]. The NYLL provides that "employees who make minimum wage or less are entitled to an additional hour of pay, at the prevailing minimum wage, for every day they work more than 10 hours." *Sanchez*, 643 F. Supp. 3d at 371; *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4 ("[A]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:  (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."). Garcia worked 3 shifts per week exceeding 10 hours from January 22, 2019 until December 31, 2019 (49 weeks), during which time the prevailing minimum wage was $12.00 per hour; 8 shifts per week exceeding 10 hours from January 1, 2020 until December 31, 2020 (40 weeks),[7] during which time the prevailing minimum wage was $13.00 per hour; 4 shifts per week exceeding 10 hours from January 1, 2021 until December 31, 2021 (52 weeks), during which time

---

[7] Garcia did not work from April 2020 to June 15, 2020, *see* Garcia Decl. ¶ 8, and those weeks are therefore omitted from the calculation.

22

the prevailing minimum wage was $14.00 per hour; and 4 shifts per week from January 1, 2022 until October 15, 2022 (41 weeks), during which time the prevailing minimum wage was $15.00 per hour. *See* Calculation of Damages, DE [20-11]; Garcia Decl. ¶ 8. Accordingly, applying an hour of pay to each such shift for the number of weeks worked, the Court recommends that Garcia be awarded $9,216.00 for spread-of-hours damages.

          5.     Pre-Judgment Interest

Plaintiffs also seek an award of prejudgment interest. *See* Pls.' Mem. at 22. Although the FLSA does not allow for recovery of both liquidated damages and pre-judgment interest, *see Santillan*, 822 F. Supp. 2d at 298, the NYLL does. *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707(ENV)(MMH), 2024 WL 4271234, at *16 (E.D.N.Y. Sept. 19, 2024) ("[T]he NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest."). The NYLL provides for prejudgment interest at a rate of 9% per year. N.Y. C.P.L.R. 5001, 5004; *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015) (awarding pre-judgment interest under the NYLL and observing that interest "shall be at the rate of nine *per centum per annum*"). Interest is computed "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. 5001(b). Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." *Id.* Courts in this Circuit have found that a single reasonable intermediate date is the median date between the earliest and latest dates within the statute of limitations period that a plaintiff's wage claim accrued. *See Hernandez v.*

23

*NJK Contractors, Inc.*, No. 09-CV-4812(RER), 2015 WL 1966355, at *1 (E.D.N.Y. May 1, 2015); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760(CBA)(CLP), 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of the plaintiff's overtime claims to calculate prejudgment interest). Here, the midpoint between the start of the statutory period and when Plaintiffs commenced this action is May 12, 2022. In light of the date of this Report and Recommendation, this includes 1,386 days.

Pre-judgment interest only accrues with respect to unpaid wages, and not on liquidated or statutory damages. *Sanchez*, 643 F. Supp. 3d at 380 ("Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.") (internal quotation omitted). Applying the statutory rate of 9% per year to Garcia's $6,495.00 in unpaid overtime wages, pre-judgment interest accrues at a rate of $1.60 per day. Interest on Morales's $150,286.50 in unpaid overtime wages accrues at a rate of $37.05 per day. As 1,386 days have lapsed between the relevant midpoint and the date of this Report and Recommendation, the Court recommends that Garcia be granted $2,217.60 in pre-judgment interest, accruing at a rate of $1.60 per day until final judgment is entered, and that Morales be granted $51,351.30 in pre-judgment interest, accruing at a rate of $37.05 per day until final judgment is entered.

### 6.    Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of

the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." An award of post-judgment interest at the statutorily prescribed rate is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2001). Therefore, the Court respectfully recommends that Plaintiff be awarded post-judgment interest calculated from the date on which judgment is entered until the date on which judgment is paid, using the federal rate set forth in 28 U.S.C. § 1961.

## D.  Attorneys' Fees and Costs

The FLSA and NYLL both provide for an award of attorneys' fees for a prevailing plaintiff. *See Jimenez*, 744 F. Supp. 3d at 257 ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorneys' fees and costs in wage-and-hour actions."). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Id.* To determine reasonable attorneys' fees, the Supreme Court and the Second Circuit have held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required—creates a "presumptively reasonable fee." *Won v. Gel Factory, Corp.,* No. 20-CV-5269(EK)(ARL), 2022 WL 903121, at *8 (E.D.N.Y. Jan. 25, 2022) (Report and Recommendation), *adopted by* 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). This method "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed

25

by the hour in a comparable case." *Won,* 2022 WL 903121, at *8 (quoting *Perdue v. Kenny A. ex rel. Winn.*, 559 U.S. 542, 551, 130 S. Ct. 1662, 1672 (2010)).

"The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Maldonado v. Srour*, No. 13-CV-5856(ILG)(JO), 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016). "The moving party 'must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done.'" *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020) (quoting *Riley v. City of New York*, No. 10-CV-2513(MKB), 2015 WL 9592518, at *2 (E.D.N.Y. Dec. 31, 2015)). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Feltzin v. Union Mall, LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (citation omitted).

Having reviewed the contemporaneous time records, the Court considers the total amount of time spent, as well as the time spent on discrete tasks, to be reasonable. The rates requested, however, warrant further discussion. Plaintiffs' counsel's billing records include partner Marcus Montiero, who billed 95.2 hours at a rate of $600 per hour, and an unnamed paralegal referred to as "NC," who billed 4.4 hours at a rate of $250 per hour. Montiero Decl. ¶ Ex. 8. Nevertheless, in the instant motion, Plaintiffs' counsel seeks an hourly rate of $650 for Mr. Montiero's time and $100 for NC's time. Pls.' Mem. at 24; Montiero Decl. ¶ 8. The Court considers the rate of $600 for Mr. Montiero and a rate of $100 for NC to be appropriate.

26

Mr. Montiero is a graduate of Hofstra University School of Law and has litigated wage and hour cases since 2002. Montiero Decl. ¶¶ 29-30. He is the current Chair of the Nassau County Bar Association Labor and Employment Committee and has been lead counsel in a substantial number of cases alleging overtime violations in the Eastern District of New York. *Id.* at ¶¶ 30-36. He is qualified and able to effectively represent clients in matters similar to this. Neither the briefing nor Montiero's Declaration identifies who "NC" is or provides that person's background or qualifications.[8] In both instances, the Court recommends that the lower rate be applied. With respect to Montiero, he seeks to apply a rate that exceeds the rate stated in the billing records; with respect to the unnamed paralegal, a rate of $250 is excessive.

Nevertheless, the Court considers Mr. Montiero's rate of $600 per hour, as charged in the billing records, as well as the rate of $100 per hour, as sought on behalf of NC in the instant motion, to be reasonable. To this end, Courts in the Eastern District of New York have recently observed an increase in reasonable hourly rates to keep pace with inflation and the reality of current times. *See, e.g.*, *Rubin v. HSBC Bank USA, N.A.*, 763 F. Supp. 3d 233, 242 (E.D.N.Y. 2025) ("Times have changed. Attorneys' fees, like other goods and services, increase in cost with inflation. Retaining the same rates as far back as at least 2012 is no longer sustainable.

---

[8] Although not cited in Plaintiffs' briefing, the Court notes that, in *Martinez v. One Jeanswear Grp., Inc.*, No. 24 Civ. 7512(ER), 2025 WL 1380301 (S.D.N.Y. Apr. 15, 2025), the Court awarded fees at a rate of $150 per hour for a paralegal at Mr. Montiero's firm with the same initials as the paralegal here. Given the similarity and proximity in time of the cases, it is fair to assume this is the same individual.

27

Moreover, it runs counter to the admonition of the Supreme Court that the lodestar should be current rather than historic hourly rates.") (internal quotations and citations omitted).  Accordingly, the respective hourly rates of $600 and $100 are reasonable. *Matter of S.S.*, No. 25-CV-1309(BMC), 2025 WL 2897522, at *2 (E.D.N.Y. Oct. 10, 2025) (allowing for hourly rate of $600 for a partner); *Mecea v. Yid Info. Inc.*, No. 23-CV-8409(OEM)(MHH), 2025 WL 926204, at *4 (E.D.N.Y. Mar. 27, 2025) (awarding an hourly rate of $100 for paralegals); *Agudath Israel of Am. v. Hochul*, No. 20-CV-4834(KAM)(RML), 2021 WL 5771841, at *9 (E.D.N.Y. Dec. 6, 2021) (awarding an hourly rate of $600.00 for two attorneys, each with more than 20 years of experience) (citations omitted).  Applying the recommended rate of $600 per hour to Mr. Montiero's 95.2 hours billed, and the recommended rate of $100 per hour to NC's 4.4 hours billed, the Court recommends that Plaintiffs be awarded $57,560.00 in attorneys' fees.

Finally, both the FLSA and NYLL provide that a prevailing plaintiff is entitled to recover litigation costs from the defendant.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  This includes, *inter alia*, "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Plaintiffs seek $1,169.70 in costs.  *See* Proposed Judgment ¶ 12.  They have submitted appropriate substantiation of the costs they seek to recover.  *See* Montiero Decl. Ex. 11.  Accordingly, the Court recommends that Plaintiffs be awarded $1,169.70 in litigation costs, for a total of $58,729.70 in attorneys' fees and costs.

28

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion for a default judgment be granted in part and denied in part.  The Court recommends that judgment be entered against Defendants, jointly and severally, in favor of Garcia in the amount of $34,423.60, and that pre-judgment interest accrue at a rate of $1.60 per day until the date on which judgment is entered, and that Plaintiffs be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961.  The Court recommends that judgment be entered against Defendants, jointly and severally, in favor of Morales in the amount of $361,924.30, and that pre-judgment interest accrue at a rate of $37.06 per day until the date on which judgment is entered, and that Plaintiff be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961.  The Court further recommends that Plaintiffs be awarded $58,729.70 in attorneys' fees and costs.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below.  Plaintiffs are directed to serve a copy of it on Defendants via first-class mail and promptly file proof of service by ECF.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days of service.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See Ferrer v. Woliver*, No. 05-CV-3696,

2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902

(2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
             February 26, 2026

                        /s/ Steven I. Locke
                        STEVEN I. LOCKE
                        United States Magistrate Judge